## In the Court of Common Pleas of Schuylkill County.

### CHARLES HEWETT v. WM. H. BRIGHT.

An affidavit of defence set forth that the notes in suit were given for lumber which defendant was to sell for payee on commission, and that there was an agreement made at same time that if the lumber was not sold when notes matured, then the payee was to take care of them and have them renewed, and that the endorsee who was the plaintiff knew of this agreement and had taken the notes as a collateral security for a pre-existing indebted-. ness.

*Held*, That if the notes were to be regarded as accommodation notes, then the endorsee could recover even though they were pledged as a collateral security for a pre-existing indebtedness, and he knew of the agreement between the parties.

That if the notes were to be regarded not as accommodation notes, but as given in the usual course of business, then the parol agreement merely affected the time of payment of the note, and not the consideration, and for that reason was inadmissible in evidence.

That the affidavit was defective in not showing due and reasonable diligence on the part of the defendant in selling the lumber.

**Rule in above cases for judgment for want of Sufficient affidavit of defence.**

Opinion delivered by

GREEN, J. These are suits upon two promissory notes, one dated January 20, 1874, at 4 months for $1,000, the other Feb. 16, 1874, at 6 months for $800, given by the defendant to J. H. Jenkins, president of the N. C. Manufacturing Company, and transferred by endorsement

to the plaintiff. The defendant sets out in his affidavit of defence that he had received a large amount of lumber from the payee to be sold on commission, and that he gave these notes on account of this lumber, but with the understanding that the notes were to be renewed when due, or that payee was to take care of them, unless the defendant was able to pay them from money in his hands arising out of the sale of the lumber. He also swears that when the notes fell due, he had no money in his hands, arising from such sale to pay them, and that they are without consideration. And further that the notes were transferred to the plaintiff, as a collateral security for a pre-existing debt, due from payee, and with full knowledge of the arrangement between the maker and payee as to the payment of the notes, and that the transfer of said notes to plaintiff was a fraud on the defendant.

Is this defence sufficient? For a proper analysis of this question there are two points of view in which these notes may be regarded. First, as accommodation notes, and second, as notes given for a supposed consideration, or for a consideration which has failed.

If we regard these notes as accommodation notes, then clearly they were loans of the maker's credit, for the benefit of the payee. Even if there was an express agreement between them that the payee was to take care of the notes when they became due, this would not affect the endorsee, even if he had knowledge of the agreement. Such an agreement would be no more than is implied in the giving of any accommodation note, viz.: That the party who is accommodated, that is, the real debtor, should pay the note when due. This is just what this affidavit of defence in effect alleges, that the payee would take care of the note, and that it was to be renewed when due, if the maker had not sufficient money in hand arising out of the proceeds of the lumber to pay it himself.

Another consequence follows if these notes are to be regarded as accommodation notes. They might be used either for the purpose of obtaining money by selling them, or to pay a pre-existing debt, or as a collateral security for such indebtedness. And the fact that the holder knew they were but accommodation notes would constitute no defence, for *non constat* that they were not given for the very purpose to which they were applied, whether to pay a pre-existing debt, or as a collateral security for the said debt, as is alleged in the present case. The rule of law upon the subject is very forcibly put by C. J. Black in Lord v. The Ocean Bank, 8 H. 386: "He who chooses to put himself in the front of a negotiable instrument for the benefit of his friend, must abide the consequences, and has no more right to complain, if his friend accommodates himself by pledging it for an old debt, than if he had used it in any other way. Accommodation paper is a loan of the maker's credit, with-

out restriction as to the manner of its use." See also Appleton v. Donaldson, 3 Barr. 381; Moore v. Baird, 6 Casey, 138.

If we regard these notes not as accommodation notes, but as given in the usual course of business, then, if they have been endorsed over to the plaintiff not as an absolute payment but only as a collateral security for a pre-existing debt, it is evident that the defendant may avail himself in this suit of any defence which he may have against the payee of the note. Whether such defence would avail him if the note had been transferred as an absolute payment it is needless to inquire. The affidavit of defence avers that it was transferred as a collateral security. In the case of Selden v. Neemes, 7 Wright, 421, which was a suit brought on a promissory note by an endorsee against the maker, Woodward, J., says: "It is of no consequence that the suit is in the name of Neemes (endorsee) for the affidavit alleges that he holds it merely as collateral for an old debt of Simpkins (payee), which is to allege that Simpkins is the beneficial party in the suit. If Neemes so holds the note, he is suing it for the benefit of Simpkins, and the defence is as appropriate as if Simpkins, and not Neemes were the plaintiff named on the record."

Would then the defendant have a defence if the payee was the plaintiff? Does the affidavit disclose such a state of facts as to show that these notes are without consideration as is alleged? They were given on account of lumber, which was in the defendant's possession, and which he alleges he had received from the payee to sell on commission. True, the defendant alleges that they were not to be paid until he had money enough out of the sale of the lumber to pay them, and that in the meantime the payee was to take care of them and have them renewed. But this is an allegation which affects merely the time of payment, and not the consideration for which they were given. The defendant says in effect, I'm bound to pay, but I'm not bound to pay now—not until I have sold the lumber which is in my possession. This strikes not at the consideration, only at the time of payment. The defendant having the payee's lumber in his possession, which he was to sell, and with the proceeds of which he was to pay the notes, cannot set up either a want of consideration or for the same reason a failure of consideration. Even if he could, it does not appear that the fault was not his that the lumber was not sold and the money realized. For aught that appears, if he had been reasonably diligent, he might have sold the lumber. If he were to allow the lumber to rot in his yard, could he thus indefinitely postpone, and eventually defeat the payment of the these notes, without alleging some sufficient reason why it was not sold? Most assuredly not. Nor does the affidavit allege any restriction or interference on the part of the payee, which prevented the sale of the lumber.

The notes having been given for a consideration, the only question that remains is whether a parol agreement, made when the notes were given, which only affected the time of payment can avail as a defence. Clearly it cannot, because it is inadmissible in evidence to vary or contradict the written contract of the parties. It could not be given in evidence as between the maker and payee, much less between the maker and endorsee. The case of Anspach v. Bast, 2 P. F. Smith, presents some striking features of similarity to the present case. The suit was brought upon a note at six months, part consideration of the purchase of a colliery. The defendant in his affidavit made defence upon the ground that there was a parol agreement at the time the note was given, that it was to be paid out of the coal mined at the colliery, at the rate of thirty cents a ton, and that if enough coal had not been got out to pay it at maturity, then it was to be renewed. The affidavit was held insufficient upon two grounds. First, because it did not aver that the mines had been "diligently and constantly worked," which the agreement required them to be, and second, because parol evidence of an agreement made when note was given, that it should be renewed at maturity, would contradict the written contract of the parties, and was therefore inadmissible.

In Hirst v. Hart; 23 P. F. Smith, p. 289, Sharswood, J., says: "Nor was the fact that Heoner (payee) had agreed not to negotiate the note, and to renew it until it could be paid out of the profits, any more available, *even as between the parties.* Such a parol agreement, though made at the time, is inadmissible in evidence to vary the effect of the written contract in the case of negotiable paper." To the same effect are Hill v. Garr, 4 Barr. 493, and Mason v. Graff, 11 Casey, 448.

For the reasons stated the rules for judgment for want of sufficient affidavits of defence are made absolute.

Rules absolute.